**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4275**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

JEREMY TODD BROWN,

             Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Elkins.  John Preston Bailey, Chief District Judge.  (2:09-cr-00014-REM-JSK-1)

Submitted:  March 31, 2011          Decided:  April 13, 2011

Before AGEE, DAVIS, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

E. Ryan Kennedy, ROBINSON & MCELWEE, PLLC, Clarksburg, West Virginia, for Appellant.  William J. Ihlenfeld, II, United States Attorney, Stephen D. Warner, Assistant United States Attorney, Elkins, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jeremy Todd Brown was convicted by a jury of conspiring during the fall of 2007 to possess with intent to distribute and manufacture more than 50 grams of methamphetamine (Count One); aiding and abetting the possession of materials for the manufacture of methamphetamine in November 2007 (Count Two); and possession in November 2007 of pseudoephedrine knowing that it would be used to manufacture methamphetamine (Count Three).[1] Brown appeals his convictions on the ground that a defense witness was called to testify out of order, before the government finished presenting its case. He also challenges his sentence, arguing that the district court clearly erred in finding that an obstruction of justice adjustment applied. U.S. Sentencing Guidelines Manual § 3C1.1 (2009). Last, he contends that the $100 special assessment on each count of conviction was an excessive fine that violated the Eighth Amendment and the Origination Clause of the Constitution. We affirm.

At Brown's trial, the government presented evidence that he was involved in a conspiracy to manufacture methamphetamine at a trailer home on his mother's property on Abbot Road in Upshur County, West Virginia, and other places.

---

[1] Brown was acquitted on Count Four, which charged that he aided and abetted the possession of materials for the manufacture of methamphetamine in February 2009.

2

In the early hours of November 21, 2007, a search warrant was executed at the Abbot Road trailer. A functioning methamphetamine lab was found in the trailer, which appeared to have been abandoned during the clean-up after a methamphetamine cook. Chris Perry was one of many government witnesses. He testified that Brown or someone else cooked methamphetamine at the trailer at least once a week. He said he was at the trailer on November 21, 2007, with a number of people, including Brown, who cooked methamphetamine that night and was cleaning up when the law enforcement authorities arrived. Perry said he and Brown and the others left the property by the back way, going over the hill.

Another government witness, Melissa Frey, testified that she lived with Brown's girlfriend, Jency Hinkle, during the time of the charged conspiracy and that for three or four years Brown regularly supplied Hinkle with methamphetamine at their apartment. She said that Brown usually brought "a wad about as big as a golfball[.]" Frey also testified that Brown, who was on pre-trial release at the time, called her the week before his trial began and suggested to her that "maybe it wasn't a ball of crank" (methamphetamine) that she had seen, "maybe it was tissues." At the end of the first day of trial, the district court revoked Brown's bond, finding that his contact with Frey, a potential witness, violated the conditions of his release.

3

The government's last witnesses, who were all in custody, arrived late at the courthouse. Anticipating a possible delay in the trial proceedings, the district court asked defense counsel, Brian Kornbrath, whether he would be willing to call some of his witnesses out of order. Kornbrath initially said he would prefer not to do that. However, after the government had put on its only available witness, a discussion was held off the record between the court and the attorneys. The court then explained the situation to the jurors and told them –

> So rather than have you sit here with dead time . . . the defense, Mr. Kornbrath, is going to call one of his witnesses out of order. But this witness he is calling is part of his case which would normally come after the Government's case is completed. But in order to move things along, he's going to call this witness out of order.

Brown's sister, Sheila Minix, then testified that no one was living in the trailer at the time the search warrant was executed, and that a number of people had stayed there on a temporary basis. After her testimony, the government presented its remaining witnesses.

Following Brown's conviction, the probation officer recommended that his contact with Frey was an attempt to influence a witness that warranted a two-level adjustment for obstruction of justice. Brown objected to the adjustment. At sentencing the court found that, although Brown had not

4

explicitly asked Frey to change her testimony, he had made an implicit request that she do so, and that the adjustment applied. The court sentenced Brown to a term of 360 months on Count One, and concurrent sentences of ten years on Count Two and twenty years on Count Three. The court ordered Brown to pay a special assessment of $100 for each count. No fine was imposed, but Brown was ordered to pay restitution in the amount of $6425.

On appeal, Brown contests his conviction on the ground that his defense witness, Sheila Minix, was called during the government's case in chief. Brown made no objection at the time. Therefore, his claim of error is reviewed for plain error.[2] Under the plain error standard of review, United States v. Olano, 507 U.S. 725, 732-37 (1993), a defendant must show that (1) error occurred; (2) the error was plain; and (3) the error affected his substantial rights. Id. at 732. Even when these conditions are satisfied, this Court may exercise its discretion to notice the error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks omitted);

---

[2] Brown asserts that defense counsel's earlier statement that he preferred that defense witnesses follow the government's case was enough to preserve the issue. However, counsel's later failure to object indicates a change of mind.

United States v. Massenburg, 564 F.3d 337, 342-46 (4th Cir. 2009) (reviewing unpreserved Fed. R. Crim. P. 11 error).

It is not clear from the record whether the district court or defense counsel initiated the unrecorded bench conference that was held just before Minix testified.[3] In any case, Brown maintains that having his witness testify out of order "erroneously indicated to the jury that [he] had some burden to produce evidence or prove his innocence." However, the district court has discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of the truth . . . and avoid needless consumption of time[.]" Fed. R. Evid. 611(a); see also United States v. Blake, 571 F.3d 331, 349 (4th Cir. 2009) (Rule 611 gives trial court broad discretion and "a judge's ruling will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected.") (internal quotation marks and citation omitted), cert. denied, 130 S. Ct. 1104 (2010). Moreover, the Seventh Circuit has held that "changing the order in which evidence is

---

[3] The government states in its brief that defense counsel asked to approach the bench. Brown neither agrees with nor disputes this statement.

6

presented does not change the burden of proof." <u>Mays v. Springborn</u>, 575 F.3d 643, 649 (7th Cir. 2009).

In his reply brief, Brown argues that Rule 611 is limited by Rule 29 of the Federal Rules of Criminal Procedure, which presumes that the government will present its case first, after which the defendant may make a motion for acquittal and then present evidence if the motion is denied. Brown presents no authority for his position that Rule 29 limits the trial court's discretion under Rule 611. We conclude that he has not shown plain error on the part of the district court.

Brown also challenges the two-level sentence adjustment he received for obstruction of justice. We review for clear error a district court's determination that a defendant obstructed justice. <u>United States v. Hughes</u>, 401 F.3d 540, 560 (4th Cir. 2005). Here, we are satisfied that the district court did not clearly err in finding that Brown's suggestion to Frey that she might have seen him bring tissues rather than methamphetamine to her apartment was an implicit request that she so testify and an attempt to obstruct his prosecution.

Although Brown made no objection to the $100 special assessment imposed by the sentencing court under 18 U.S.C. § 3013 (2006) for each count of conviction, in this appeal he raises two challenges to the special assessment. Because Brown

7

failed to raise these issues in the district court, they are reviewed for plain error.

First, Brown claims that the special assessment is an excessive fine which violates the Eighth Amendment. The government notes that there was at one time a split in the circuits as to whether the special assessment required under § 3013 was punitive, and thus actually a fine. The question arose primarily in cases involving assimilated crimes. However, § 3013 was amended in 1987 to apply to assimilated crimes. See 18 U.S.C. § 3013(d). Brown lacks current authority to support his position that the special assessment is a fine. Moreover, even if the $100 special assessment on each count were treated as a fine, it would not be plainly excessive.

Last, Brown maintains that United States v. Munoz-Flores, 495 U.S. 385, 398-99 (1990), is no longer controlling law. In Munoz-Flores, the Supreme Court held that the special assessment did not violate the Constitution's Origination Clause, even though it was enacted in a bill that originated in the Senate, because the amount of revenue it raised that went into the general treasury (rather than the Crime Victims' Fund) was incidental. Brown contends that the special assessment currently generates enough revenue for the general treasury that the revenue cannot be deemed incidental. He relies on information contained in a "Fact Sheet" produced by the U.S.

8

Department of Justice, Office for Victims of Crimes, which he has submitted as an attachment to his opening brief. However, none of the information was presented to the district court. We conclude that the district court did not plainly err in imposing the special assessment.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED